April 30, 1906.

————————O————————

## No. 3893.

### (Court of Appeal, Parish of Orleans.)

### GEORGE WILSON vs. JOHN GAUCHE'S SONS, LTD.

Issue of fact only is involved herein.

Appeal from Civil District Court, Division "C."

A. Romain, Plaintiff and Appellee.

Cage Baldwin and Crabites, Defendant and Appellant.

MOORE, J. This was a suit for damages for personal in-
juries. The answer tenders the general issue and the special
defense of contributory negligence on the part of plaintiff.
There was judgment against the defendants for six hundred
dollars and they appealed.

The record exhibits the following facts:

Plaintiff entered the store of defendants on the 17th of Sept.,
1904, at about 2 o'clock P. M. for the purpose of purchasing
a flat iron handle. He was met at the store entrance by one of
the clerks, a young lady, to whom he made known his desire
to purchase this article. She informed him that the article was
kept in stock on the second floor and directed him to take the
elevator was located, plaintiff was proceeding in a wrong direc-

tion when the young lady called him back and indicated to him the direction in which he would find the elevator. Retracing his steps and proceeding in the direction indicated to him, he approached the hoistway inclosure, and, finding the door open, he walked in, assuming that the car was in the inclosure. It transpired that the car was not, for almost immediately upon entering the car descended on him striking him on the head, knocking him down and inflicting a compound fracture of his left leg between the ankle and the knee, which prevented him from performing his usual avocation for the period of nearly five months.

The elevator is in a dark corner of the store and the metal netting which incloses the hoistway, and into which the car or the elevator descends, is so covered with signs and articles of merchandise, and so surrounded with pedestals and tables and pictures and innumerable other wares, that it is difficult to obtain a clear view of it. There is no "pit" or depression in the floor of the space inclosing the hoistway, so as to accommo-date the car by bringing it on a level with the store floor when the car has descended to the lower floor. Therefore, a person entering the inclosure when the car is above the first floor, would have no intimation or indication, under foot, that he is stepping into an elevator space unoccupied by the car; but on the contrary one would naturally assume that as the enclosure floor is even with the store floor, the car, as is the case with all properly constructed elevators, was down and in the hoistway inclosure.

These facts, with the exception that the plaintiff found the door open when he reached the inclosure, are testified to, sub-stantially by the witnesses on both sides.

The plaintiff testifies most positively that when he reached the inclosure the door was open.

No one testifies that the door was closed at the moment plaintiff reached the inclosure; nor that they saw him open it; nor that they heard the door rattle or make any noise as if being opened, the evidence being that when being opened it rattles so that it may be heard five or six feet away.

The young lady clerk who directed plaintiff to the elevator says that the door was closed at the time she told plaintiff that the article he wanted was on the second floor, but that she immediately left him and went towards the rear of the store and that the accident happened fully five minutes afterwards.

Another witness for defendants, the "floor walker," testifies that the door was closed about "three minutes previous to the time when the accident occurred," and that he knows this because he was at the elevator when the last customer went up before plaintiff.

These are the only witnesses for defendants who testify as to whether the door was open or closed when plaintiff reached the inclosure.

The testimony of the young lady referred to as to this, and other matters testified to by her, impress us as being based rather upon her faith that certain facts must have existed, than upon her knowledge of their existence; upon impressions rather than upon observation; upon what she believes took place rather that upon what actually occurred within her vision and hearing.

The other witness, the floor walker, is not only not coroborated as to the time, when the "last customer went up," but on the contrary is contradicted by all the other witnesses for defendants; and he and these other witnesses—the others being the man in charge of the elevator when the accident occurred and the defendants' driver, who was in the elevator at the time—tell such conflicting and improbable tales, that their evidence was disregarded by the trial judge.

The young lady's testimony is that after she had directed the plaintiff to the elevator she walked to the *front* of the store; that five minutes after this she heard a scream, and, to quote her language, "I saw the elevator come down and I saw the nigger under the elevator. They pulled him out, and I heard him talking in a loud voice and some one asked the question and he said: 'I opened the door and I walked in and closed the door behind me.'"

On cross examination she says that she walked to the rear of the store; that when she heard the screams she went *further back* and did *not go forward to the scene of the accident.*

342

Consequently she did not see the elevator come down, which was in the front portion of the store, and did not see "the nigger under the elevator." It further developed that she did not know that it was the plaintiff who made the remark which she attributed to him, but that she was told it was he, who had said that. "They told me it was he," but she knew it was the plaintiff who had said that, because she recognized his voice, although she had never met him before and had heard his voice only to the extent of his asking for a flat iron handle; she also testified that the door was "shut tight," "closed with a latch" when she told the plaintiff to take the elevator.

"I was looking at it when the man (plaintiff) came in, and I was looking at it when I told him to take it," she testifies. The dark corner in which the elevator is located and the innumerable objects of merchandise which surrounds the hoistway inclosure renders it improbabl,e if not impossible, that the witness could see, even if she were "looking at it (the door) when the man came in" and when he was directed to the elevator, that the door was either open or closed, and still less that it was "closed tight, latched." Here the Court examined the witness and elicited the fact from her that it was possible to open the door from the outside by inserting the fingers through the grating of the inclosure until they reach the latch which, by pressure, will then spring back; or that by raising up the door from the bottom the latch is released and the door may then be shoved back. She did not see the plaintiff do either of these things and yet when asked whether plaintiff did open the door she answers "yes, sir." Nor did she hear the door being opened. It is shown that when the door is being opened it rattles and makes a noise that can be heard five or six feet away. Here is what this witness says about not hearing the noise of the door as it was being opened, as she testifies it was opened by plaintiff.

Q. Were you at any time so far away from the elevator that you could not have heard the noise made by the opening of that door?

A. *I was very close to it.*

Q. And you didn't hear any noise?

343

A. No, sir. I was too far away from it to hear the noise when he opened it.

In a number of other particulars not necessary to be referred to, her testimony is conflicting and unsatisfactory.

The floor walker's testimony as to the length of time which had elapsed between the accident and the ascending of the elevator with the customer who had preceded plaintiff is, as we have stated, contradicted by the other witnesses for defendants.

The person in charge of the elevator on the occasion of the accident testifies that the elevator was up on the third floor being loaded with goods for delivery; that he was up there with it fully ten minutes before making the down trip; that he had a ring for a passenger below which he did not answer and that it was after he had loaded the elevator on the third floor that he ran it down, not stopping on the second floor at all. He is corroborated as to the time the elevator was above by another employe of defendants who was also in the elevator at the time, and by the young lady clerk whom we have just referred to. The floor walker, the elevator man and the driver all testify that the plaintiff when taken out of the enclosure with his broken leg and in the midst of his pain said, in answer to the inquiry as to how the accident occurred: "I opened the door, and I walked in and closed the door behind me."

They admit, however, that he instantly recalled this statement and said that the door was found open.

The young lady clerk and the floor walker insist that the door was not only closed tight but latched and that it cannot be opened from the outside except in the manner stated, which manner of opening the door appears to have been known to no one but to the witnesses who testified as to it and perhaps the other employes of defendants. It is not shown that the plaintiff was ever in defendants' store before the occasion stated; that he or anyone else but the witnesses knew how to open the door from the outside, and it is admitted in the brief of defendants' counsel that the plaintiff is: "to all interests and purposes an honest darkey," that he " is a plantation darkey, comparatively

344

recently arrived from his home in Rapides Parish, and ignorant of conditions obtaining in cities" and the evidence shows "that he was never in a court of justice before, even as a witness," and yet we are asked to believe that this ignorant, but honest negro, deliberately forced his way in the enclosure around the hoistway by employing the singular methods which the witnesses say are necessary to open the door, and that no one saw him do so, or heard the door rattle; the floor walker admitting that he was near enough to the elevator to both see the elevator and hear the rattling, but that his attention, at the moment, was upon some other matter.

The improbability of this testimony apparently manifested itself to the learned counsel for defendants for in their brief they say that: "In order that plaintiff may be entitled to recover it is absolutely necessary that the door should be shown to have been open. Had the door been open an inch, two inches, half way, or even three-quarters open, such a condition would not operate as an invitation to enter." According to plaintiff's testimony the door was open; he did not open it at all. According to the defendants' testimony the door was closed tight, and latched, this is repeated time and again by defendants' witnesses. Either they were to be believed or the plaintiff was. So also as to the declaration which defendants' witnesses say the latter made to the effect, that he found the door closed; that he opened it; walked in and closed it behind him and which the plaintiff denies having said. As the trial judge resolved the case in favor of the plaintiff it is manifest that he believed him and did not believe the defendants' witnesses. Neither did he give credence to the testimony to the effect that they found the door closed when they heard the plaintiff's screams, and when they rushed up to rescue him from his perilous position. The condition in which they found the door and as to whether it was latched or not, or as to who opened it is as conflicting and as unsatisfactory as is the entire testimony of these witnesses. We have repeatedly held that in questions of fact and particularly where the case turns upon the credibility of witnesses, the judgment of the trial judge who saw and heard the wit-

nesses will not be disturbed unless manifestly erroneous.

The judgment is affirmed.

April 30th, 1906.

Rehearing refused May 14, 1906.